698 So.2d 324 (1997)
Mark SPANO, Appellant,
v.
Deborah SPANO, Appellee.
No. 97-0160.
District Court of Appeal of Florida, Fourth District.
August 6, 1997.
Rhea P. Grossman of Rhea P. Grossman, P.A., Miami, for appellant.
Richard A. Kupfer of Richard A. Kupfer, P.A., West Palm Beach, and Bronis & Spraker, P.A., Stuart, for appellee.
FARMER, Judge.
A former husband appeals an award of attorney's fees to his former wife after she unsuccessfully sought to have their settlement agreement as to property interests set aside. We agree with his position and reverse.
The parties to this case entered into a property settlement agreement (PSA) containing the following provision:
"ENFORCEMENT OF AGREEMENT. Both parties agree that the Court granting a decree of dissolution of marriage between the parties may, at the request of either party, insert in such decree a reservation of jurisdiction for the purpose of compelling either party to perform this agreement, or any part thereof, on his or her part to be performed, and otherwise enforce the provisions contained herein. The party against whom a Court order is secured to compel performance of this agreement, or any part thereof, agrees to pay the prevailing party all costs and reasonable attorneys' fees in connection with such proceedings."
Shortly afterwards, the court entered a final judgment of dissolution of marriage containing the following:
"The Court finds that the parties after full disclosure and upon advice of counsel have freely entered into a property settlement agreement which disposes of the parties real and personal property and also provides for child support.... The parties have waived their right to alimony. This agreement ... is incorporated by reference into this final judgment as if specifically set forth herein.
"This Court reserves jurisdiction over the parties and subject matter of this action with the exception of the issue of dissolution of marriage. This Court may enter other further orders as may be necessary, *325 appropriate or proper for the equitable enforcement of any of the terms and conditions of this judgment."
That judgment thereafter became final in all respects.
Nearly three years after the agreement and judgment, the former wife brought a proceeding under rule 1.540 to set it aside.[1] She alleged that she had not been represented by counsel; that he had greater knowledge of their financial affairs than she; that she was unaware of her rights when she signed it; that the PSA deprives her of "lawful share" of the parties' assets; that the PSA did not disclose the existence and value of shares in a corporation held by the husband and acquired with marital funds, as well as 401-k plan; and that the PSA gave him a special equity in the marital home. She claimed that under the PSA, he emerged from the marriage with more than 95% of the marital assets while his income was nearly 3 times greater than hers. She asked that the court vacate the final judgment and those parts of the PSA relating to property rights, and that the case be returned to the pleading stage to allow her to seek a different division of property. She also sought attorney's fees for bringing the proceeding under rule 1.540.
After an evidentiary hearing, the trial court ruled against the former wife. He found that she had consulted counsel, that she knew of the stock and the 401-k plan, that she knew of the marital assets, that she was not coerced or under duress, that he had not perpetrated any fraud, that she wanted the divorce and agreement, and that the agreement should thus not be set aside. He granted her prayer for attorney's fees, however, saying that fees were awarded "based on need and ability" but without specifying the source of the entitlement for fees. This appeal followed.
Arguably, the attorney's fees provision in the PSA would have entitled the former husband to fees as the prevailing party in this proceeding; plainly, in resisting her attempt to set aside the agreement, he was endeavoring to enforce the property distribution provisions in the PSA. Correspondingly, however, that same fee provision would not entitle the former wife to fees, for she did not prevail.[2] The trial judge's finding of "need and ability" undoubtedly means that he awarded fees to her under section 61.16(1). See § 61.16(1), Florida Statutes (1995). That statute provides in relevant part as follows:
"The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings and appeals." [e.s.]
The question raised by the former husband in this appeal is whether the proceeding initiated by her under rule 1.540 was a proceeding under chapter 61 as an enforcement or modification proceeding.
Of course, her prayer for relief did explicitly seek to be returned to the beginning stage of a dissolution of marriage proceeding to plead her entitlement to property under chapter 61.[3] But, as we read her motion, that was more of a consequence that would necessarily follow if she were successful in *326 obtaining the primary relief of having the property provisions of the PSA set aside. It seems fairly clear to us that her essential complaint was against the property provisions of the PSA itselfthat they were fraudulently induced by misrepresentations as to their holdings or by taking advantage of her alleged ignorance of the parties' financial affairs. We also note that she did not seek to modify child custody, visitation or support, and did not seek alimony. Her only attack was on the property division that she had expressly agreed to. The former husband argues that her motion is not a proceeding under chapter 61, but instead an ordinary rule proceeding outside of chapter 61 to set aside a consent judgment relating to purely property interests.
The former husband recognizes that equitable distribution of property is a subject included in chapter 61.[4] But the fact that the statutory scheme provides a method for dividing marital property, he implicitly argues, does not necessarily mean that a proceeding to set aside an agreement as to a consensual property division is covered by chapter 61. Indeed he cites Fayson v. Fayson, 482 So.2d 523 (Fla. 5th DCA 1986), for the proposition that a rule 1.540 proceeding to set aside a consent judgment as to property division is not within the provisions of chapter 61.
In Fayson the final judgment gave the wife exclusive possession of the marital home for so long as the minor children were living with her. After the judgment had become final, she filed a petition for modification seeking half of the costs for repairs, insurance and taxes on the marital home, and for an increase in child support ostensibly related to these expenses. The trial court granted her petition and awarded her attorney's fees under section 61.16. In reversing the order, the fifth district said: "the relief sought by the wife did not constitute an enforcement or modification of the dissolution proceedings and accordingly the trial court lacked jurisdiction to entertain the petition." 482 So.2d at 525. The court also reversed the award of fees, saying:
"Section 61.16 ... provides for the award of attorney's fees in dissolution proceedings, including enforcement and modification proceedings. Here the action brought by the wife was not an action to modify or enforce a dissolution decree and hence the wife was not entitled to fees. Even if this section were applicable, the wife is not entitled to fees because she had the same, if not superior, ability to secure legal counsel."
482 So.2d at 525. Thus, even though the former wife had couched her attempt to revise the property division of the final judgment as a modification of child support, the court looked at the substance of her proceeding and concluded that it was not within chapter 61. Because, however, the trial court had also found that she had failed to demonstrate her own need for fees, the alternative holding that the proceeding did not arise under chapter 61 may be viewed as dicta. In contrast in this case, the trial court's finding that the former wife had demonstrated need and the ability of the former husband to pay is supported by record evidence, so we directly and necessarily confront the separate question as to whether a post judgment effort under rule 1.540 to revise the property division is a proceeding under chapter 61.
The PSA represents an agreement between the parties to a marriage that it is not necessary for the court to determine property rights in accordance with chapter 61. If a PSA itself represented a division of property under chapter 61, it is difficult to imagine why the parties would need to make an agreement in the first place, for the statute has already done that. By a PSA, the parties have manifested in a most unmistakable way that they desire to make their own division of marital assets. The mere fact that the legislature has provided a division of property for those divorcing parties who cannot agree on a distribution cannot logically result in a determination that those parties who can agree are nevertheless bound by the statute.
*327 At the same time, a property distribution under chapter 61 is quite different than alimony, child support, or child custody and visitation as regards the ability to modify a judgment. Section 61.14(1) provides:
"When the parties enter into an agreement for payments for, or instead of,support, maintenance, or alimony, whether in connection with a proceeding for dissolution or separate maintenance or with any voluntary property settlement, or when a party is required by court order to make any payments, and the circumstances or the financial ability of either party changes or the child who is a beneficiary of an agreement or court order as described herein reaches majority after the execution of the agreement or the rendition of the order, either party may apply to the circuit court of the circuit in which the parties, or either of them, resided at the date of the execution of the agreement or reside at the date of the application, or in which the agreement was executed or in which the order was rendered, for an order decreasing or increasing the amount of support, maintenance, or alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties or the child, decreasing, increasing, or confirming the amount of separate support, maintenance, or alimony provided for in the agreement or order." [emphasis supplied].
Section 61.14 makes clear that only alimony and child support, or child custody, or child visitation may be modified after final judgment. In other words, under chapter 61 the property distribution is conclusive with the final judgment. A property distribution under section 61.075 may not be modified even if the needs of a party change after the judgment. Weimer v. Weimer, 677 So.2d 86 (Fla. 4th DCA 1996) (equitable distribution is more permanent than permanent alimony, which may be modified based upon a change in circumstances.)
The non-modifiability of a property distribution after final judgment serves important interests for both parties. After all, if a property distribution could be modified after final judgment, the spouse receiving the property would be effectively disabled from transferring his/her interest in it for fair value to any third party. The value of the interest in the property distributed would therefore become severely impaired, for no purchaser would pay fair market value for property whose ownership might later be changed by the trial judge.
Given section 61.14's rather explicit failure to empower the court to modify property interests after final distribution, it follows that the trial court lacks jurisdiction under chapter 61 after a final judgment to decide property questions, unless the final judgment reserves such jurisdiction for a specific purpose regarding identified property, or is reversed, or is otherwise set aside. Semko v. Semko, 537 So.2d 588 (Fla. 3rd DCA), rev. denied, 542 So.2d 989 (Fla.1989) (subsequent order requiring distribution of retirement plan constituted redetermination of property rights and improperly modifies a vested right); Flanders v. Flanders, 516 So.2d 1090, 1091 (Fla. 5th DCA 1987) ("In the absence of facts supporting a reformation in equity, courts have no authority to modify a property settlement agreement."); Brandt v. Brandt, 525 So.2d 1017, 1019 (Fla. 4th DCA 1988) ("where there is no reservation of jurisdiction the court obviously has no authority to entertain a petition to modify the provisions of a final judgment adjudicating property rights."); see also Carroll v. Carroll, 545 So.2d 338 (Fla. 4th DCA 1989); and DePeyster v. DePeyster, 629 So.2d 221 (Fla. 4th DCA 1993). And so, any attempt after a final judgment to modify an agreed property division must find its basis outside of chapter 61. Here, the former wife found that basis in a rule proceeding to set aside the final judgment so as to revoke or reform the settlement agreement on the grounds of fraud. Hence, her proceeding arose under rules 1.540 and 12.540 and the common law, but not under chapter 61.
If her proceeding was not under chapter 61 but under rule 1.540, there is no authority for an award of fees under section 61.16. As we noted earlier, entitlement to fees under section 61.16 is limited to "maintaining or defending any proceeding under this chapter, *328 including enforcement and modification proceedings and appeals." Section 61.16 says nothing about post judgment proceedings to vacate a consent judgment as to the property division on the grounds that it was procured through fraud or mistake.[5]
Moreover, there are good prudential reasons for not reading into section 61.16 a right to fees to bring this kind of proceeding. Consent judgments are special and deserving of the greatest protection from assault. See, e.g., Robbie v. City of Miami, 469 So.2d 1384 (Fla.1985) ("[S]ettlements are highly favored and will be enforced whenever possible."); Dorson v. Dorson, 393 So.2d 632 (Fla. 4th DCA 1981) ("[A] stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court. This is especially true of settlement agreements which are highly favored in the law."). The policy of deference to settlements should apply with special force to consent judgments for property division in divorce cases. The law strongly encourages voluntary resolutions in all cases, but in no area is this more true than when the parties seek to dissolve their marriage.
Society has the strongest possible interest in seeing the end of discord among family members and between the parents of young children. Indeed we have provided an entire set of forms and rules for uncontested dissolution of marriage cases, and we require mediation in all contested ones. To settle these cases is blessed. The preference for settlements would be undermined if a contracting party could financewith the funds of the party seeking to uphold the agreementunsuccessful proceedings to undo such agreements simply by showing need and ability to pay. In the absence of an explicit direction from the legislature that section 61.16 applies to the kind of proceeding involved here, we are simply unable tor read such authority into the statute.
While the statute encourages parties to seek relief from a broken marriage through the availability of attorney's fees and costs for impecunious spouses and parents, different policies attend an effort to unsettle a settlement. The mere existence of the availability of attorney's fees to fund the divorce case does not justify requiring the party seeking to uphold the settlement agreement to pay the legal fees of the opposing party in seeking to have it set aside. That is even more true where, as here, the attempt is found meritless after an evidentiary hearing. Thus even assuming that in some rare case the party moving to set it aside might arguably qualify for preliminary legal fees under section 61.16 simply to undertake the effort of convincing a judge that the agreement should be cancelled, there is absolutely no justification in our mind to allow that unsuccessful party to recover fees when the attempt is later found without merit.
In passing, we also note that even if somehow this could be characterized as a proceeding arising under chapter 61, the recent decision in Rosen v. Rosen, 696 So.2d 697 (Fla. 1997), would require that the award be reversed. In Rosen the court held that proceedings under chapter 61 are equitable and that section 61.16 should be construed "to allow consideration of any factor necessary to provide justice and ensure equity between the parties." As the court explained:
"Under this scheme, the financial resources of the parties are the primary factor to be considered. However, other relevant circumstances to be considered include factors such as the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior or pending litigation. Had the legislature intended to limit consideration *329 to the financial resources of the parties, the legislature easily could have said so."
Id. In the case we face today, it is clear that the trial court considered only need and ability, and gave no thought to whether equitable factors, including who prevailed and the nature of the proceeding brought by the fee seeking party, should result in a denial of fees. Because we have determined that the case below did not arise under chapter 61, however, the trial court has no occasion to consider whether other equitable factors in this case preclude or would limit the amount of a fee under section 61.16.
REVERSED.
GUNTHER and PARIENTE, JJ., concur.
NOTES
[1] See Fla.R.Civ.P. 1.540(b)(3) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment ... for ... fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party ....") and Fla.Fam.L.R.P. 12.540 ("[Rule] 1.540 shall govern general provisions concerning relief from judgment, decrees, or orders, except that there shall be no time limit for motions based on fraudulent financial affidavits in marital or paternity cases.").
[2] We do not address or decide whether the text of this particular attorney's fees provision in this PSA operates as a waiver by both parties of any right to attorney's fees under section 61.16, Florida Statutes (1995), in the original divorce case or in any future proceeding.
[3] See § 61.075(1), Fla. Stat. (1995) ("In a proceeding for dissolution of marriage, in addition to all other remedies available to a court to do equity between the parties ... the court shall set apart to each spouse that spouse's nonmarital assets and liabilities, and in distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors....").
[4] See fn. 2, above.
[5] We distinguish the cases relied on by the former wife. Tucker v. Greenberg, 674 So.2d 807 (Fla. 5th DCA 1996), and Sanchez v. Sanchez, 647 So.2d 1046 (Fla. 4th DCA 1994), involved post judgment proceedings to modify child custody, while our case involves property issues only. Krueger v. Krueger, 689 So.2d 1277 (Fla. 2nd DCA 1997), involved a modification of child support. To the extent that Dubreuil v. Dubreuil, 489 So.2d 97 (Fla. 3rd DCA 1986), and Planes v. Planes, 477 So.2d 42 (Fla. 3rd DCA 1985), disclosed by our own research, involve post judgment attempts to modify only property distributions, we disagree with them and certify conflict.